IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01064-CMA-MEH

NORTHERN GOLF, INC., and
MICHAEL NORTHERN,

    Plaintiffs,

v.

CITY OF COLORADO SPRINGS,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion for Judgment on the Pleadings [filed March 23, 2017; ECF No. 18]. The Honorable Christine M. Arguello referred the motion to this Court for recommendation. ECF No. 19. The motion is fully briefed, and the Court finds that oral argument will not assist in its adjudication. Defendant's motion asks the Court to determine whether Plaintiffs' Complaint states a constitutional violation against the City of Colorado Springs. Because Plaintiffs' claims fail to allege an entity liability claim under 42 U.S.C. § 1983, the Court respectfully recommends that Defendant's motion for judgment on the pleadings be granted.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after

**BACKGROUND**

**I.  Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiffs in the Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(c). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6).").

Defendant owns two public golf courses within its city limits—Patty Jewett Municipal Golf Course and Valley Hi Golf Course. Compl. ¶ 7, ECF No. 1. Defendant contracts with private businesses to operate the golf courses' concessions. *Id.* at ¶ 9. From 1994 to 2014, Northern Golf, Inc.—a company wholly owned by Michael Northern—successfully operated and managed the concessions at Valley Hi. *Id.* at ¶ 10. During the latter part of this period, a company named Gimmie Golf operated the concessions at Patty Jewett. *Id.* at ¶ 11.

From 2012 through 2014, Defendant employed a golf manager, named Dal Lockwood, to oversee its courses. *Id.* at ¶ 8. Plaintiffs presented evidence to Lockwood that Gimmie Golf mismanaged Patty Jewett, costing Defendant hundreds of thousands of dollars in lost revenue. *Id.* at ¶ 13. Despite this evidence, Lockwood took no action to penalize Gimmie Golf. *Id.* at ¶ 14. To the contrary, Lockwood routinely approved improvements at Patty Jewett, while rejecting Plaintiffs' proposed improvements at Valley Hi. *Id.* at ¶ 16. Additionally, in 2012, Lockwood instituted a

---

being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

baseless investigation into Northern Golf's operations of Valley Hi and issued a "Cure Notice" to Plaintiffs for a deficiency in cash flows. *Id.* at ¶ 17.

Northern Golf's and Gimmie Golf's contracts with Defendant had set expiration dates and required Defendant to engage in a competitive bidding process before renewal. *See id.* at ¶¶ 19, 21. Pursuant to this process, after Defendant accepted bids for the concessions at each golf course, a panel of "evaluators" decided which bid to accept. *See id.* at ¶ 24. In 2013, Lockwood renewed Gimmie Golf's expired contract without seeking bids. *Id.* at ¶ 18. However, when Northern Golf's then-existing contract was set to expire on December 31, 2014, Lockwood opened the contract to the competitive bidding process. *Id.* at ¶¶ 21–22. Gimmie Golf and Northern Golf submitted bids, and Defendant awarded the contract to Gimmie Golf. *Id.* at ¶ 23. The evaluators of the bids based their decision, at least in part, on Lockwood's 2012 investigation of Northern Golf and the lack of any similar investigation into Gimmie Golf's conduct. *Id.* at ¶ 24. After Defendant terminated Northern Golf's contract, Mr. Northern raised his concerns regarding Gimmie Golf's management with the chief of staff for Defendant's mayor and through a formal ethics complaint. *Id.* at ¶¶ 25–26. Defendant dismissed both of these complaints. *Id.*

Shortly thereafter, Defendant forced Lockwood to resign due to Lockwood's "poor management skills and blatant favoritism . . . ." *Id.* at ¶ 28. In September 2015, Defendant posted the golf manager position on the Internet. *Id.* at ¶ 29. Shortly after Mr. Northern applied, Defendant removed the position, allegedly due to "budgetary issues." *Id.* at ¶¶ 30–31. Nonetheless, Defendant eventually filled the position with someone less qualified than Mr. Northern. *Id.* at ¶¶ 32–33.

**II.    Procedural History**

Based on these factual allegations, Plaintiffs filed their Complaint on May 10, 2016. ECF

No. 1. Plaintiffs bring three claims for relief under 42 U.S.C. § 1983. *Id.* at ¶¶ 35–51. Plaintiffs' first claim alleges that Defendant treated Northern Golf, a class of one, differently than other similarly situated entities, and thus violated Northern Golf's equal protection rights. *Id.* at ¶ 37. Plaintiffs' second claim asserts a cause of action for deprivation of Northern Golf's property interest in the maintenance of its concessions contract with Defendant and its right to bid on the Patty Jewett contract. *Id.* at ¶¶ 40–45. Plaintiffs' final claim for relief contends Defendant refused to hire Mr. Northern for the golf manager position in retaliation for Mr. Northern's complaints about Gimmie Golf. *Id.* at ¶¶ 46–51.

Defendant filed an Answer to the Complaint on June 3, 2016. ECF No. 10. Then, on March 23, 2017, Defendant filed the present Motion for Judgment on the Pleadings. ECF No. 18. Defendant argues the case should be dismissed, because Plaintiffs' Complaint does not allege an official policy or custom. *Id.* at 3–4. Additionally, Defendant asserts that all of Plaintiffs' causes of action fail to state a constitutional violation. *Id.* at 5–14. Plaintiffs filed a Response to Defendant's Motion on April 13, 2017. ECF No. 20. Plaintiffs contend Defendant is liable, because Lockwood's actions amount to an informal policy or custom, Lockwood is a final policymaker, and alternatively, Defendant ratified Lockwood's decisions. *Id.* at 4–6. Plaintiffs also argue that each of their causes of action sufficiently alleges a constitutional violation. *Id.* at 6–15. On April 27, 2017, Defendant filed a Reply in Support of its Motion. ECF No. 21.

## **LEGAL STANDARDS**

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000); *Aberkalns v. Blake*, 633 F. Supp. 2d 1231, 1233 (D. Colo. 2009) ("Courts review a

motion for judgment on the pleadings using the same standard as a motion under Rule 12(b)(6).").
"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more

than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## **ANALYSIS**

The issues before the Court are whether Plaintiffs allege an official policy or custom of Defendant and whether any of Plaintiffs' claims plead a constitutional violation. The Court holds that Plaintiffs assert an official policy or custom, because the allegedly unconstitutional actions were taken by final policymakers. However, because none of Plaintiffs' claims state a constitutional violation, the Court recommends granting Defendant's motion.

**I.      Municipal Policy or Custom**

Defendant first argues the Court should dismiss Plaintiffs' Complaint, because Plaintiffs fail to allege an official policy or custom. Def.'s Mot. 3–5. According to Defendant, Lockwood was responsible for the allegedly unconstitutional actions, and Defendant cannot be held liable under respondeat superior. *Id.* Plaintiffs argue that Defendant established an official policy through at least three methods: an informal custom, Lockwood's status as a final policymaker, and alternatively, Defendant's ratification of Lockwood's decisions. Pls.' Resp. 4–6. The Court holds that because at least some of Plaintiffs' allegedly unconstitutional actions were taken by final

policymakers, Plaintiffs state an official policy or custom. However, Lockwood's actions are not attributable to Defendant; thus, Defendant is not liable to the extent Plaintiffs claims are based on Lockwood's conduct.

To allege a constitutional violation against a municipal entity under Section 1983, a plaintiff must assert: the existence of an official policy or custom, a direct causal link between the policy or custom and the constitutional injury, and that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767–69 (10th Cir. 2013). To establish an official policy or custom, a plaintiff may point to: (1) a formal regulation or policy, (2) an informal custom that is so widespread it amounts to a custom or usage with the force of law, (3) a decision of an employee with final policymaking authority, (4) final policymakers' ratification of their subordinates' decisions, or (5) a failure to adequately train or supervise employees. *See, e.g.*, *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). In deciding whether an official is a final policymaker, courts primarily look to three factors: (1) whether the officials' discretionary decisions are constrained by general policies, (2) whether the decisions are reviewable by others, and (3) whether the decisions were within the official's authority. *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1211 (10th Cir. 1998). A final policymaker's decision can give rise to municipal liability "even if the official's decision is specific to a particular situation." *Id.*

Here, the Court holds that Plaintiffs have alleged actions taken by employees with final policymaking authority. Plaintiffs' claims for relief are based on two allegedly unconstitutional actions: (1) Defendant's failure to renew Northern Golf's concessions contract at Valley Hi and (2) Defendant's refusal to hire Mr. Northern. *See* Compl. ¶¶ 35–51. First, Plaintiffs assert that by

7

deciding not to renew the contract, Defendant violated Northern Golf's equal protection rights and deprived Northern Golf of a property interest without due process. *Id.* at ¶¶ 38, 43. According to Plaintiffs' Complaint, a panel of "evaluators," not Lockwood, determined to give Plaintiffs' contract to Gimmie Golf. *Id.* at ¶¶ 23–24. Plaintiffs do not allege that the evaluators' decision was constrained by any policies. Instead, the panel was apparently free to consider any facts it thought relevant. *Id.* at ¶¶ 24 (stating two facts the evaluators considered). Moreover, Plaintiffs' allegations suggest that Defendant terminated Northern Golf's contract directly after the evaluators granted the contract to Gimmie Golf. *Id.* at ¶¶ 24–25. This supports the notion that the panel's decisions was not subject to a review process and was within the evaluators' authority.

Second, Plaintiffs assert that by deciding not to hire Mr. Northern, Defendant retaliated against Mr. Northern for his protected speech. *Id.* at ¶¶ 29–30. Plaintiffs' Complaint makes clear that an individual employee of Defendant made the final decision not to hire Mr. Northern. *Id.* at ¶¶ 29–30. If this decision was unconstitutional, Defendant can be held liable. *See Randle v. City of Aurora*, 69 F.3d 441, 450 (10th Cir. 1995) ("If the City officials are final policymakers in the area of personnel policy (i.e. are authorized to make final employment decisions as to wages, promotions, hiring and termination), the City can be held liable for any impermissible employment decisions . . . ."). Therefore, the Court holds that Plaintiffs allege actions taken by a final policymaker of Defendant.

However, Defendant is not liable for Lockwood's allegedly unequal and discriminatory treatment. Plaintiffs attempt to attribute Lockwood's conduct to Defendant by arguing that Lockwood's actions amount to an informal custom of unequal treatment, Lockwood is a final policymaker, and alternatively, that final policymakers ratified Lockwood's unconstitutional

8

actions.² Pls.' Resp. 4–6. Plaintiffs' arguments are unavailing.

To establish an informal custom, a plaintiff must allege "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "In attempting to prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City and Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). "[A] plaintiff's 'failure to allege the existence of similar discrimination as to others seriously undermines her claim that the City maintained a custom of discriminatory personnel practices.'" *Id.* (quoting *Randle*, 69 F.3d at 447). Here, Plaintiffs fail to allege that Defendant discriminated against other similarly situated contractors. To the contrary, Plaintiffs argue in their response that the "informal custom . . . allowed for *one company*—GG—to be permitted to engage in widespread and widely known misconduct without consequence." Pls.' Resp. 4–5 (emphasis added). This is insufficient to allege the existence of a widespread unconstitutional policy. *Praprotnik*, 485 U.S. at 128 (holding that the plaintiff failed to allege an informal policy, in part because, the plaintiff did not contend that the allegedly unconstitutional action "was ever directed against anyone other than himself.").

---

² In one sentence of their response, Plaintiffs attempt to claim the existence of a municipal policy through Defendant's failure to supervise Lockwood. Pls.' Resp. 6 ("There is likewise at least a strong inference of lackadaisical supervision by higher-ups within City government."). However, the Court finds no allegations in the Complaint to support this theory of municipal liability. Indeed, nowhere in the Complaint do Plaintiffs even mention supervision, let alone allege what level of supervision or training was necessary.

9

Second, Plaintiffs' allegations rebut a finding that Lockwood was a final policymaker. Plaintiffs assert that Defendant's "own policies and procedures" required Lockwood to open contracts to the competitive bidding process. Compl. ¶ 19. Therefore, Lockwood's decisions were "constrained by general policies."[3] *Dill*, 155 F.3d at 1211. Plaintiffs also allege that a panel of evaluators, not Lockwood, was responsible for the final decision on whether to renew a contract, Compl. ¶ 24, which demonstrates that even if Lockwood influenced the contract determination, Lockwood's "decisions [were] reviewable by others." *Dill*, 155 F.3d at 1211. Therefore, Plaintiffs' allegations contradict, rather than support, a finding that Lockwood was a final policymaker.

Alternatively, Plaintiffs argue that Defendant ratified Lockwood's decisions. Pls.' Resp. 6. According to Plaintiffs, their allegation that the panel of evaluators placed undue weight on Lockwood's investigation of Northern Golf is evidence of ratification. *Id.* at 5. To allege that a municipal entity ratified an employee's unconstitutional action, a plaintiff must assert that "authorized policymakers approve[d] a subordinate's decision and the basis for it." *Praprotnik*, 485 U.S. at 127. Plaintiffs fail to allege Lockwood made a decision that Defendant's final policymakers accepted. Placing undue weight on an allegedly faulty investigation is not ratification or acceptance of a decision and the basis for it.[4] Additionally, Plaintiffs do not contend that Lockwood made a recommendation on what contract to accept. Therefore, the Court holds Plaintiffs fail to allege that

---

[3] The fact that Lockwood allegedly failed to follow this policy when he renewed Gimmie Golf's contract is immaterial to whether Defendant had a policy of differential treatment. *See Praprotnik*, 485 U.S. at 127 ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.").

[4] Even if Defendant's reliance on the investigation could be considered ratification of unequal treatment, Plaintiffs' claim would still fail, because, as the Court more fully discusses in Section II, Plaintiffs fail to state an equal protection claim.

Defendant ratified a determination Lockwood made.

Because Lockwood's actions cannot be attributed to Defendant, the Court will confine its analysis on the merits of Plaintiffs' claims to whether Defendant's final policymaker's actions violated Plaintiffs' constitutional rights. In other words, the Court must analyze only whether declining to renew Northern Golf's contract and failing to hire Michael Northern was unconstitutional.

## II. First Claim for Relief

Plaintiffs' first cause of action asserts a class of one equal protection claim. Compl. ¶¶ 35–39. According to Plaintiffs, Northern Golf "was treated differently from others similarly situated without a rational basis justifying different treatment." *Id.* at ¶ 37. Defendant contends that equal protection claims brought on a class of one theory are inapplicable in the government contractor context. The Court agrees.

It is well settled that "the class-of-one theory of equal protection has no application in the public employment context . . . ." *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 607 (2008). This is because "government offices could not function if every employment decision became a constitutional matter." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)). Under the same rationale, many courts have extended *Enquist* to the government contractor context. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269 (11th Cir. 2008) ("We have little trouble applying the reasoning in *Enquist* . . . to the government-contractor relationship."); *Airday v. City of New York*, 131 F. Supp. 3d 174, 185 (S.D.N.Y. 2015) ("Courts within this Circuit also bar 'class of one' equal protection claims brought by government contractors."); *Mountain Cascade Inc. v. City & Cty. of San Francisco*, No. C-13-03702 DMR, 2013 WL 6069010, at *5 (N.D. Cal. Nov. 18, 2013) ("[T]he

court is persuaded that *Enquist* applies to government-contractor relationships for the same reason that it applies to government-employee relationships.").

Although the Tenth Circuit has not had to rule on the issue, it has stated that "a relatively strong case can be made that we should follow suit and extend Enquist to cases involving claims asserted by government contractors . . . ." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1256 (10th Cir. 2016). Moreover, the Supreme Court has recognized that courts should apply government employment precedents in the government contractor context because of the obvious similarities between employees and contractors. *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996). Based on this precedent, and because "[t]he government needs to be free to terminate both employees and contractors for poor performance, to improve the efficiency, efficacy, and responsiveness of service to the public, and to prevent the appearance of corruption, *id.*, the Court holds that *Enquist* applies to government contractors.

Plaintiffs argue *Enquist* is inapplicable, because "the City's actions here are those of a sovereign, not a proprietor." Pls.' Resp. 8. According to Plaintiffs, "by reserving to each of the two concessionaires a monopoly to operate and sell at the golf courses, the City was wielding its regulatory and licensing power . . . ." *Id.* However, "when the government deals with its contractors, it is not acting as sovereign, but rather in a role that is many ways similar to that of employer." *Planned Parenthood Ass'n of Utah*, 828 F.3d at 1256; *SECSYS, LLC v. Vigil*, 666 F.3d 678, 690 (10th Cir. 2012) ("[W]hen the government interacts with independent contractors . . . the government acts in a more proprietorial and less regulatory capacity."). Here, because Defendant was determining which independent contractor it would employ to help operate the Valley Hi Golf Course, the Court holds that Defendant was clearly acting in a role similar to that of an employer.

12

Therefore, the Court recommends that Plaintiffs' class of one equal protection claim be dismissed.

## III. Second Claim for Relief

Plaintiffs' second cause of action asserts that Defendant deprived Northern Golf of property interests without due process. Compl. ¶¶ 40–45. According to Plaintiffs, Northern Golf possessed property interests in the continuation of its concession contract at Valley Hi and its right to bid on the contract at Patty Jewett.[5] *Id.* Defendant argues that Northern Golf did not have a cognizable property interest in the indefinite continuation of its contract or the right to bid on other contracts. Def.'s Mot. 10. The Court agrees with Defendant.

"The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': 'To have a property interest in a benefit, a person clearly must have . . . 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). Supreme Court precedent "recognize[s] that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* Therefore, "[i]n the absence of a statutory or contractual right to renewal, a person employed under consecutive annual contracts ordinarily can claim no property interest in the indefinite renewal of his or her contract." *Brown v. Indep. Sch. Dist. No. I-06 of McCurtain Cty., Okla.*, 974 F.2d 1237, 1239 (10th Cir. 1992).

Here, the Court recommends holding that Plaintiffs have not sufficiently alleged the

---

[5] In their response, Plaintiffs seem to suggest that Defendant's conduct also violated Northern Golf's liberty interest in its good name and reputation. Pls.' Resp. 12. However, Plaintiffs' Complaint makes clear that the second claim for relief asserts only the deprivation of a property interest. Compl. ¶ 43. Regardless, Plaintiffs' liberty interest claim would fail, because it is entirely predicated on Lockwood's issuance of a "Cure Notice." Pls.' Resp. 12. As the Court already held, Lockwood's actions cannot be attributed to Defendant for purposes of Section 1983 municipal liability.

existence of a property interest. According to the Complaint, Northern Golf had a property interest in the continuance of its contract, because Defendant had "renewed [the contract] many times previously, [and] Northern Golf had a reasonable expectation of renewal based on its performance relative to that of Gimmie Golf and the closed renewal extended to Gimmie Golf." Compl. ¶ 21. However, Tenth Circuit precedent makes clear that an individual does not obtain a property interest as a result of successive contract renewals. *Brown*, 974 F.2d at 1239 ("The appellants therefore cannot rely upon the six successive renewals of their employment contracts as evidence of the existence of a property right."); *see Durant v. Indep. Sch. Dist. No. 16 of LeFlore Cty., State of Okla.*, 990 F.2d 560, 563 (10th Cir. 1993) ("[N]onrenewal of a contract does not trigger the same due process concerns afforded a termination."). Moreover, far from granting Northern Golf a contractual right to renewal, Northern Golf's contract required Defendant to conduct the competitive bidding process before renewing it. *See* Compl. ¶ 19.

The Court also holds that Northern Golf did not have a cognizable property interest in the right to bid on the Patty Jewett contract. Although Plaintiffs allege Gimmie Golf's contract required Defendant to seek other bids, it does not follow that Northern Golf had a contractual right to make a bid. Plaintiffs do not allege that Northern Golf was a party to Defendant's contract with Gimmie Golf or that Defendant and Gimmie Golf intended to benefit Northern Golf when they executed the contract. *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1177 (10th Cir. 2016) ("[B]ecause [the plaintiff] is not a party to the contract, it cannot claim a property interest arising out of that contract."); *see S K Peightal Eng'rs, LTD v. Mid Valley Real Estate Sols. V, LLC*, 342 P.3d 868, 873 (Colo. 2015) (stating that, to be a third-party beneficiary to a contract, the parties' agreement must have intended to benefit the third party). Therefore, Northern Golf has not plausibly

14

alleged the existence of a property interest in the right to bid on the Patty Jewett contract.

Plaintiffs make two arguments in support of their position that Northern Golf has a protected property interest. First, Plaintiffs rely on *Perry v. Sinderman*, 408 U.S. 593, 602 (1972), for the proposition that an individual who has held a position for a number of years might be able to show that he has a legitimate claim of entitlement to job tenure. Pls.' Resp. 10. However, the Court does not find that *Perry* controls the present case. First, *Perry* dealt with a teacher's employment termination, which "does not trigger the same due process concerns" as nonrenewal of a contract. *Durant*, 990 F.2d at 563. Additionally, the Court noted in *Perry* that the teacher would not have a property interest in job tenure if state law specifically denied her such a right. *Perry*, 408 U.S. at 602 n.7. Here, Northern Golf's contract denied Northern Golf an automatic right to renewal. *See* Compl. ¶ 19. Therefore, Defendant's previous renewals did not create an implied understanding sufficient to give rise to a property interest.

Second, Plaintiffs argue that Defendant's limited discretion created a property interest. Pls.' Resp. 11. According to Plaintiffs, the competitive bidding requirement limits Defendant's discretion, and thus, granted Northern Golf a property interest in the continuance of the contract. *Id.* However, the Court does not find that the bidding requirement limited Defendant's discretion. Indeed, it only obligated Defendant to seek other bids. Plaintiffs do not allege that it limited the manner in which Defendant decided between the bids. Therefore, the competitive bidding process did not "limit[] [Defendant's] discretion to disapprove" Northern Golf's bid. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). As such, Plaintiffs have failed to assert a property interest, and the Court recommends that the district court dismiss Plaintiffs' second cause of action.

**IV.    Third Claim for Relief**

Plaintiffs' final claim alleges that Defendant violated Michael Northern's First Amendment right to be free from retaliation. Compl. ¶¶ 46–51. According to Plaintiffs, Defendant rejected Mr. Northern's application for the golf manager position because of Mr. Northern's "exercise of his constitutional right to criticize Gimmie Golf's operations . . . ." *Id.* at ¶ 50. The Court recommends finding that Plaintiffs fail to state a First Amendment claim.

To determine whether Defendant made an impermissible hiring decision, the Court must apply the four-step test articulated in *Pickering v. Board of Education of Township High School District*, 391 U.S. 563 (1968). *Worrell v. Henry*, 219 F.3d 1197, 1207 (10th Cir. 2000) ("This circuit has applied the *Pickering* balancing to hiring decisions.").

> The first three steps of the Pickering test are (1) whether the speech touches on a matter of public concern, (2) whether the employee's interest in commenting on matters of public concern outweighs the interest of the state in promoting the efficiency of the public service it performs through its employees, and (3) whether the protected speech was a substantial or motivating factor behind the adverse employment decision. If these three factors are met, (4) the burden shifts to the employer to establish that it would have reached the same decision in the absence of the protected conduct.

*Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 330 F.3d 1275, 1285 n.7 (10th Cir. 2003).

In this case, even assuming Plaintiffs appropriately assert the first two steps of the test, they do not allege facts showing that the protected speech was a substantial or motivating factor behind the failure to hire Mr. Northern. When considering whether an adverse employment action and protected speech are related, courts primarily consider the temporal proximity of the statements to the adverse action. *See Baca v. Sklar*, 398 F.3d 1210, 1221 (10th Cir. 2005). Mr. Northern's most recent protected speech was a formal ethics complaint he filed on October 14, 2014. Compl. ¶ 27. Defendant posted the golf manager position almost a year later in September 2015. *Id.* at ¶ 29.

16

"[T]he one-year time lapse is too great to draw a causal connection between his protected grievance and [the failure to hire]." *Doerr v. Colo. Div. of Youth Servs.*, 95. F. App'x 295, 298 (10th Cir. 2004); *Maestas*, 416 F.3d at 1189 ("[E]vidence such as a long delay between the employee's speech and challenged conduct . . . tend[s] to undermine any inference of retaliatory motive and weaken the causal link.").

"Other evidence of causation may include evidence the employer expressed opposition to the employee's speech or evidence the speech implicated the employer in serious misconduct or wrongdoing." *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005). Plaintiffs do not allege Defendant expressed any opposition to the speech. Although Plaintiffs state Defendant "swept [the complaints] under the rug," Compl. ¶ 26, the Court does not find this to be specific opposition. Additionally, Plaintiffs do not contend the speech implicated the decisionmakers in serious misconduct or wrongdoing. Plaintiffs do not specifically allege the content of the formal ethics complaint; however, the Court can infer from the context of the Complaint that Mr. Northern raised issues regarding Lockwood's discriminatory treatment and Gimmie Golf's improper management. *See* Compl. ¶¶ 13–27. These concerns do not accuse those making the hiring decision of any misconduct, but relate only to alleged misconduct of Defendant's golf manager and independent contractor.

Perhaps most importantly, Plaintiffs do not plead that the individuals responsible for the hiring decision had knowledge of Mr. Northern's protected speech. *See Maestas*, 416 F.3d at 1189 (stating that "an employer's knowledge of the protected speech" is an important consideration in determining causation); *Morfin v. City of E. Chi.*, 349 F.3d 989, 1006 (7th Cir. 2003) (explaining that protected conduct cannot be a basis for retaliation where the defendant did not know of such

conduct). Although Plaintiffs allege the formal ethics complaint was referred to Defendant's Human Resources Department, Compl. ¶ 26, this is insufficient to plausibly state that the specific individuals determining who to hire for the golf manager position knew of the ethics complaint.

The Court finds the present case similar to the Tenth Circuit's decision in *Glover v. Mabrey*, 384 F. App'x 763 (10th Cir. 2010). In that case, the plaintiff made comments to the media that the department of transportation's faulty design increased the costs of a highway construction project. *Id.* at 769. The plaintiff claimed that because of these comments, one of the defendants adopted a policy of denying all engineering requests submitted by the plaintiff. *Id.* at 772. The Tenth Circuit affirmed the district court's dismissal of the case on Rule 12(b)(6) grounds. *Id.* at 773. The court found it important that the plaintiff failed to allege facts showing the defendant worked in concert with the defendants against whom the protected comments were made. *Id.* at 772–73. Moreover, because the complaint provided "no indication of whether [the defendant's] actions took place within days, weeks, or even years of [the plaintiff's] public statements, . . . [t]he complaint provide[d] nothing which actually ties the [protected] comments and [the defendant's] actions together . . . ." *Id.* at 773. Similarly, Plaintiffs do not allege facts showing that the individuals who decided not to hire Mr. Northern worked in concert with Lockwood. To the contrary, Plaintiffs' allegations that Defendant forced Lockwood to resign because of poor management skills and blatant favoritism, Compl. ¶ 28, undermine Plaintiffs' retaliation claim. Indeed, it would be illogical to conclude that Defendant retaliated against Mr. Northern for advising it of the conduct that ultimately led to Lockwood's forced resignation. Moreover, similar to *Glover*, Plaintiffs have not alleged sufficient temporal proximity between the protected conduct and allegedly retaliatory action.

In sum, Plaintiffs' First Amendment retaliation claim fails as a matter of law, because

18

Plaintiffs have not pleaded the fourth step of the *Pickering* balancing test. Accordingly, the Court recommends dismissing Plaintiffs' third claim for relief.

## **CONCLUSION**

The Court holds that Lockwood's allegedly unconstitutional actions cannot be attributed to Defendant for purposes of Section 1983 entity liability. Although Plaintiffs allege actions taken by final policymakers of Defendant, Plaintiffs' allegations fail to state plausible constitutional violations. Accordingly, the Court respectfully recommends that Defendant's Motion for Judgment on the Pleadings [filed March 23, 2017; ECF No. 18] be **granted**.

Entered and dated at Denver, Colorado, this 4th day of May, 2017.

BY THE COURT:

*Michael E. Hegarty*

———————————————
Michael E. Hegarty
United States Magistrate Judge